COOPER *v.* HAMILTON.

Bill for an injunction to restrain a stranger from taking rails from the owner's land, and for an account, &c. *Held*, that this being the case of an ordinary trespass, the bill could not be sustained.

ERROR to the *Allen* Circuit Court.

SMITH, J.—This was a suit in chancery brought by *Henry Cooper* against *Allen Hamilton*. The bill of complaint charges that, in 1836, one *Lee* bought the west half of a certain section of canal land in *Allen* county; that *Lee* assigned his certificate to one *M'Makin*, who assigned it to *Cooper*, the complainant, who, in 1841, perfected his title by obtaining a patent; that, in 1838, *Sherman* and *Wilson* had possession of the east half of the same section, and about that time assigned their certificate to one *Columbia*, who, in *January*, 1842, sold his interest to *Hamilton*, the defendant. The bill then charges that either *Sherman* and *Wilson* or *Columbia*, or all of them, while in possession of said east half of said section, commit-

May Term,
1847.

COOPER
v.
HAMILTON.

ted trespasses on the land of the complainant by cutting down trees, and splitting them into rails which were used in making a fence; that said fence was upon *Cooper's* land; that at the time *Hamilton* came into the possession of the adjoining half section, there were about fifteen hundred of these rails upon the complainant's land; that *Hamilton* caused about seven hundred of them to be moved from the complainant's and put upon his own land, and was persisting in a determination to carry away the remainder. The bill prays for an injunction to prevent the defendant from removing the remainder of the rails, and that he be required to account for the value of those previously taken by him.

The injunction was granted, but on final hearing upon the bill of complaint, the answer of the defendant, and a deposition taken in the cause, the Court, after finding the facts set forth by the complainant to be true, ordered his bill to be dismissed.

The interference, by injunction, in restraint of waste was originally founded on privity of title, and the Courts were for a long time extremely strict in confining their relief to such cases. The rigour of this rule has been very much relaxed, and, indeed, it is now held that an injunction will lie for a mere trespass, but only in cases of great and irreparable mischief. 6 Johns. C. R. 46.—7 *id*. 315, 332.—2 Story's Eq. 207. No precise rule can be laid down as to the cases in which an injunction will be granted against a stranger, to prevent the commission of a trespass, but it is always expected that a strong case of destruction or irreparable mischief will be made out—of irreparable mischief which may be effected before any trial can be had as to the controverted right. Eden on Inj. 233.—7 Ves. 308. But an injunction will not be allowed, in order to prevent the repetition of a trespass, where the plaintiff has an adequate remedy at law. 1 Johns. C. R. 318. We do not think the facts alleged in the bill of complaint in this cause, admitting them to be true, present a case which calls for the interposition of a Court of Chancery. The plaintiff had an adequate remedy at law and the bill was properly dismissed (1.)

*Per Curiam.*—The decree is affirmed with costs.

*H. Cooper*, for the plaintiff.

*W. H. Coombs* and *I. H. Kiersted*, for the defendant.

(1) Where there was no privity of title and the injury was a mere *trespass*, Courts of equity did not interfere until the time of Lord *Thurlow;* it being considered that the law furnished, in such cases, a sufficient remedy. "I remember," says Lord *Eldon,* "when in a case of trespass, unless it grew to a nuisance, an injunction would have been refused: and even in the case of waste, if by temporary acts, from time to time merely, the subject of an action, and not bringing along with it irreparable mischief, Lord *Hardwicke* thought it was granted only as following the relief. Lord *Thurlow* had great difficulty as to trespass. I have a note of a remarkable case, in which the name of one of the parties was *Flamang.* There was a demise of close *A.* to a tenant for life; the lessor being landlord of an adjoining close *B.* The tenant dug a mine in the former close. That was waste from the privity. But when we asked an injunction against his digging in the other close, though a continuation of the working in the former close, Lord *Thurlow* hesitated much; but did at last grant the injunction: first, from the irreparable ruin of the property as a mine; secondly, as it was a species of trade; and, thirdly, upon the principle of this Court enjoining in matter of trespass, where irreparable damage is the consequence." *Hanson* v. *Gardiner,* 7 Ves. 305, 307.

Since *Flamang's* case, mentioned above, there have been frequent cases, both in *England* and in the *United States,* in which trespasses, strictly so called, have been enjoined. The 'rule, however, on the subject appears to be well settled, that it is only where the trespass is of an aggravated character—where the mischief is to the substance of the estate and irreparable—that an injunction will be granted. *Jerome* v. *Ross,* 7 Johns. C. R. 315. "If," says Judge *Story,* "the trespass be fugitive and temporary, and adequate compensation can be obtained in an action at law, there is no ground to justify the interposition of Courts of equity." 2 Story's Eq. 260. See Eden on Injunctions, ch. 8, 9.—2 Story's Eq. 240 to 262.